UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCISCO PAGAN, | CIVIL ACTION<br>No. 21-cv-01621 |
| Plaintiff, | |
| v. | (SAPORITO, M.J.) |
| RICHARD D. DENT, et al., | |
| Defendants. | |

## MEMORANDUM

This diversity action arises out of a motor vehicle accident which occurred on January 31, 2021, on Interstate 81 in Hazle Township, Luzerne County, Pennsylvania. The case is assigned to us upon the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. The matter is now before us on the defendants' motion for partial summary judgment as to the plaintiffs' punitive damages claim. (Doc. 39)[1]. This motion is fully briefed. (Doc. 42; Doc. 44; Doc. 46). We heard oral argument on the motion on

---

[1] By separate order (Doc. 52), we granted the unopposed motion for summary judgment filed by the defendant, Blair Logistics, LLC (Doc. 38), and we dismissed it as a defendant.

September 7, 2023. The matter is now ripe for decision. For the reasons set forth herein, we will deny the motion.

## I. Statement of Facts

On January 31, 2021, at approximately 9:00 p.m., defendant Richard D. Dent, a holder of a valid Commercial Driver's License, was operating a tractor trailer for defendant P&S Transportation, Inc., and defendant P&S Transportation, LLC, d/b/a P&S Transportation (collectively "P&S") on Interstate 81 near Exit 143, Hazle Township, Luzerne County, Pennsylvania. It was snowing, and Interstate 81 was covered with about eight inches of snow. Travel restrictions limited speed to 45 miles per hour, and tractors were prohibited from towing lightly loaded open trailers. Dent was carrying a load that weighed approximately 60,000 lbs. At that time, and due to the inclement weather, the plaintiffs were sitting inside their disabled vehicle which was parked off the road within the triangle shaped section immediately before the exit ramp sign. However, plaintiff Markham Pagan testified that the front wheels of his vehicle were "three feet onto the road." (Doc. 39-7, at 172.) Nonetheless, a PennDOT highway foreman, James P. Lewis, observed the plaintiffs' vehicle before the accident and said that

the plaintiffs' vehicle was completely off the roadway. (Doc. 44-6, at 6, 9.)

Dent was operating the tractor-trailer at about 53 mph when he lost control of the vehicle as he attempted to change lanes, causing it to jackknife and land on top of the plaintiffs' vehicle. Dent, a lifelong resident of Louisiana, testified that he had some training on space management, visual surroundings, ice and snow, and speed reduction on ice and snow. But he also testified that he did *not* have any training in extreme driving conditions at the time of the accident. (Doc. 44-8, at 8.)

## II. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

### III. Discussion

Under Pennsylvania law, punitive damages apply only when the "defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)). In Pennsylvania, punitive damages are "an extreme remedy" available in the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (internal quotation marks omitted). This type of damage is not

compensatory in nature, but is meant "to heap an additional punishment on the defendant who is found to have acted in a fashion which is particularly egregious." *Id.* at 446. In Pennsylvania, a punitive damages claim must provide sufficient evidence to demonstrate that (1) a defendant had a subjective appreciation of the risk of harm that the plaintiff was exposed to, and (2) the defendant acted or failed to act in conscious disregard of that risk. *Hutchison* 870 A.2d 766, 772 (2005). "[T]he determination of whether an individual was reckless inherently involves a fact-intensive inquiry." *Mulholland v. Gonzalez*, No. 08-3901, 2008 WL 5273588, at *3 (E.D. Pa. Dec. 18, 2008).

Although "ordinary negligence will not support an award of punitive damages, 'punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured.'" *Young v. Westfall*, No. 06-CV-2325, 2007 WL 675182, at *2 (M.D. Pa. Mar. 1, 2007) (citing *Hutchison*, 870 A.2d at 770). In making such a determination, the state of mind of the actor is an essential consideration. *Id.* Further, there is not a general proscription against pursuing damages in the context of a

negligent supervision claim, if the facts allow for it. *Hutchison*, 870 A.2d at 773.

Here, the defendants argue that they are entitled to summary judgment on the issue of recklessness and punitive damages because the plaintiffs have failed to cite any facts of record which support or lead to a reasonable inference that the defendants had a subjective appreciation and chose to ignore it. The plaintiffs contend that the motion should be denied because the evidence demonstrates that defendant Dent was aware of the approaching winter storm as he received weather alerts all week, and that, in snow and ice conditions, he had been trained to pull over and find a place to park when he was not under any time restraints for the delivery of his load, as here. Further, PennDOT issued a "Tier 1" warning, which prohibited certain vehicles from operating on the interstate, and which reduced the speed limit to 45 mph. (Doc. 44-5, at 3-6.)

As to Dent's speed, the defendants concede that PennDOT reduced the speed limit to 45 mph because of the weather conditions, but they argue that there is no evidence that Dent saw those warnings, and that if he had, he was only exceeding the speed limit by 8 mph. (Doc. 42, at

6

23.) The plaintiffs point to Dent's deposition testimony where he, too, conceded that he was traveling in excess of the speed limit immediately before the accident. (Doc. 44-8, at 35.) Further, the plaintiffs proffered the expert testimony of Walter A. Guntharp who opined that, given the conditions that existed at the time of the accident, if Dent traveled at 30 mph or less, he would have had more time and distance to make a gradual movement that would have allowed him to maintain control of his vehicle. (Doc. 44-12, at 8-9.)

Next, the defendants contend that Dent was neither fatigued nor distracted at the time of the accident. (Doc. 42, at 24.) Further, they maintain that Dent tried to stop at an earlier truck stop, but it was full. (*Id.*) A review of the dashcam video provided by counsel demonstrates that Dent was driving with one hand while holding a soda bottle in his other hand. (Doc. 44-7.) The video shows it was snowing and that there may have been an ice build-up on a portion of the windows. (*Id.*) Based upon Dent's deposition testimony, the plaintiffs posit that Dent was running up against his 11-hour hours-of-service limitations because, had the accident not happened, he would have ended his travel for the day within the next five minutes after that. (Doc. 44-8, at 32.) In addition,

the plaintiffs' expert, Christopher Shapley, opined that Dent's plan to travel to exit 145 before stopping for the day required him to average *50 mph* to avoid violating the 11-hour limit imposed on his hours of driving. (Doc. 44-10, at 2.)

Next, P&S argues that there is no evidence it was reckless because it told Dent to get to a safe place if he encountered bad weather, it provided its drivers with continuing training, and it monitored their hours of service. In their opposition to the defendants' motion for partial summary judgment, the plaintiffs argue that the applicable standard of care for operation of a commercial tractor-trailer truck, such as that driven by Dent, is derived from the Federal Motor Carrier Safety Regulations promulgated by the Federal Motor Carrier Safety Administration. The plaintiffs have proffered expert witness evidence that, based on weather conditions at the time of the vehicular collision at issue here: Dent failed to reduce his speed to a reasonable degree in response to the adverse weather conditions; that his speed was in excess of the Tier 1 snow emergency requirements set by PennDOT and violated the training set forth in Section 2 of the CDL manual; Dent's excessive speed and failure to find a safe location to park his tractor-trailer violated

the adverse weather conditions requirements of Part 392.14 of the FMCSRs; Dent could not safely apply his breaks because he was travelling at or in excess of 50 mph; Dent failed to use both hands to steer because he was holding a soda in one of his hands; Dent should have stopped well before entering into the storm area as he had advance notice of the storm; and Dent was operating in excess of his hours of service. (Doc. 44-12, at 7.)

The plaintiffs have further proffered evidence that P&S: failed to provide Dent with a road test; failed to provide Dent with any training on driving in adverse weather conditions until after the crash; had no written policies regarding dispatching drivers into areas that were experiencing adverse weather conditions; took no steps to delay the load or require Dent to stop until the storm passed; and failed to properly monitor Dent's logs and discover his speeding violations. (*Id.*) The plaintiffs seek punitive damages from the employer directly, based on its purportedly wanton failure to train or supervise Dent with respect to the safe operation of his vehicle, failure to monitor Dent's logs and discover that he was speeding on a regular basis, failure to adjust load dispatch and reschedule freight for transport, and failure to control Dent's

activities and require that he wait until the storm had passed before entering into the area that was affected by it. (*Id.* at 15.)

Based upon our review of the motion papers and the evidence proffered by the parties in support and opposition to the motion, we find that there are genuine issues of material fact precluding a finding of summary judgment. In particular, we find that, viewing the proffered evidence in the light most favorable to the non-moving parties, a reasonable jury could find that Dent operated his vehicle in a reckless manner, and that P&S exhibited reckless disregard in its failure to train and supervise Dent. Thus, the motion will be denied.

An appropriate order follows.

Dated:  January 30, 2024

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge